WILLIS J. PARNELL, plaintiff in error, *vs.* L. C. ROBINSON, administrator, defendant in error.

1. When a partnership was formed in which it was stipulated that two men would enter upon a commission and ware-house business, the one to furnish the buildings and fixtures, and the other to keep the books

and devote himself, his time and talents, to the business, the latter does not violate the terms of the contract if, after the houses furnished by the former are full of cotton, and the former refuses and fails to erect or help to furnish more houses, the latter puts up others at his own expense and stores cotton in them, and does not at all neglect his duties in respect to the joint storage and commission business; nor, in such a case, is the former entitled to participate in profits made from the private storage.

2. In such a partnership, if the partner whose duty it was to superintend the business die, his estate will be entitled to share in profits from the storage of cotton stored in his life-time, though not realized by the disposal of the cotton till after his death, after deducting the actual expense of the delivery of the cotton to the bailors, or of its sale—including the keeping of the accounts thereof.

3. Where in such a partnership, shortly after the death of the deceased partner, the survivor sells certain cotton stored with the firm, and realizes the money thereon, and no owners of said cotton have appeared for ten or twelve years to claim the fund, which is in the hands of the survivor, the administrator of the deceased partner will be entitled in equity to a due proportion of such fund as against the survivor, and the court will confirm an award to that effect; but at the same time, in order further to protect the surviving partner, it will direct that the part of the fund so awarded the administrator be kept in court for a reasonable time—twelve months longer, say—and advertisement thereof be made, so that the true owners, if there be such, may have that additional time to make and prove claims thereto; and if none be made and proven, then the fund recovered will be paid to the administrator.

Contracts. Partnership. Administrators and Executors. Waifs. Before Judge WRIGHT. Thomas Superior Court. April Adjourned Term, 1876.

Reported in the opinion.

A. T. McINTYRE; R. S. BURCH; C. P. HANSELL, for plaintiff in error.

J. L. SEWARD; J. R. ALEXANDER, by A. W. HAMMOND & SON, for defendant.

Jackson, Judge.

Parnell and Evans formed a partnership in October, 1861,

in the commission and warehouse business in Thomasville. Evans agreed to superintend the business, keep the books, etc., etc., and Parnell agreed to furnish the warehouse, put it in good order, and furnish all necessary fixtures to carry on the business free from rent to Evans. Both agreed to share equally in expenses and divide net profits, and share equally losses. The partnership was to continue for three years, but it was afterwards indefinitely extended. On the 1st of June 1865, Evans died, and Robinson administered on his estate. He brought this bill, as such administrator, against Parnell, the surviving partner, for settlement of the partnership business, alleging that a large profit was made, to one-half of which his intestate was entitled. The bill prayed for discovery as well as relief. It lingered in court for some years to await the settlement or termination of suits pending against the surviving partner by creditors, the record being silent in respect to the time when it was first filed in office. In the year 1875, all matters in dispute were referred to arbitrators, one on each side, with an umpire to determine between them. An award was made in favor of the administrator for $6,054.50; exceptions were taken to the award; they were overruled by the presiding judge, who made the award the judgment of the court; the defendant excepted, and the question is, ought the award to be made the judgment of the court? The record is somewhat voluminous, but the facts necessary to an adjudication of the points in issue may be briefly stated.

Some twelve thousand dollars worth of unclaimed cotton, stored in the warehouse, was sold in 1865 or 1866, by the surviving partner, and one question made is, is the administrator entitled to share in this sum as profits?

After the warehouse and other joint buildings were filled with cotton, the deceased partner, as his administrator alleged, built other houses, and stored cotton therein, but upon this point the proof was conflicting. For cotton stored in which of these houses was he responsible for profits to the survivor, if any? and for which was he not? it being con-

tended that the surviving partner, Parnell, would not join in building and was not injured, as all the joint buildings were full, and Parnell contending the reverse. The arbitrators held Evans' administrator not responsible for these private profits, and the question is, was this decision right?

Some profits were made, after the death of Evans, from storage on the cotton stored in his life-time, and the arbitrators held Parnell responsible for such profits, and another question is, was this right under the contract?

1. In respect to the refusal of the arbitrators to hold Evans' estate responsible for the private storage, the evidence having been quite conflicting, we do not see how the court below could interfere. If it were true that no damage resulted to the firm, that their houses were full, and that the firm business was not neglected by Evans, of which latter point there was no proof, we think the decision of the arbitrators was right. Certainly the law was not so palpably violated, or the facts so outraged, as to authorize the court to set aside an award.

2. And in regard to the right of the deceased partner to participate in profits from the storage commissions accruing after his death, we think that the question turns on what labor, which he had to do by the contract, was required of Evans after his death. We presume that the mass of the work was done when the cotton was procured from the planter by Evans, the receipts given therefor, entries made on the books as to the time received etc., etc., and that all that was done after his death was the mere turning of the cotton out. What it cost to do that, we do not know. There is no proof upon the point. It should have been allowed as expenses, and we presume that it was. At all events, we cannot say that the court so erred in not setting aside the award on this ground as to require us to interfere.

3. The great controlling question in the case is, was the award right in holding the surviving partner responsible for the proceeds of the unclaimed cotton? It seems to be conceded by the dissenting arbitrator, and admitted on all sides,

that if the administrator of the deceased partner was entitled to half of the proceeds of that sale, the award was right as to the amount. Was he so entitled?

This cotton had been stored by the joint capital of the partners; it was sold very soon after the death of Evans, the answer says, in 1865 or 1866. Taking it most strongly against the defendant who made it, the cotton was sold in 1865, the very year he died. He was clearly entitled to his share of storage for it. And in regard to the corpus, if it was a waif, who ought in equity to have it? It was put in charge of the firm—it was in their joint possession—possession in the absence of a better title — of the claim of the true owners, the bailors—is title to personalty. Besides, this bill is brought for the dead man by his administrator, and discovery of everything was prayed for in connection with this partnership, so that the estate of the dead might get his rights from the living. Yet the living does not answer who are the true owners, or where they are, so as to enable the administrator to make them parties; nor does he himself ask that they may be made parties. He alone knows them. Why does he not divulge their names, and have their rights adjudicated under this bill by making them parties thereto? Are they all dead? Did they fall in the war? Have they left heirs? There is a death-like stillness in this record on all these points. Ten or twelve years have already elapsed since this cotton was sold, and the money pocketed by this surviving partner, and no true owner has yet appeared. It looks strange, and needs explanation, but none is given by him who alone can give it. The case is *sui generis*. We know of none like it. A waif has drifted into the place of business of these partners—it was stored there by them on joint account—one of them died—the other has sold it, and the proceeds are in hand. The question is, what shall be done with them? Undoubtedly the surviving partner holds all assets of the partnership, and administers them; but the deceased partner's estate is also responsible, in the second instance at least, for the goods stored with the firm; and when twelve years have

passed, and nobody yet has claimed the cotton, it seems that his administrator might well require an account, and demand the right to hold the half, as his intestate's estate would be responsible for that amount.   Under all the peculiar facts of this case, we are not prepared to say that the finding of the arbitrators was wrong.   But for the existence of the firm, Parnell would not have been possessed of the cotton, and hence he would not have had the money which now represents it.   The business of the firm was to store cotton, and if by any chance profits should be the result of that business, though in an unforeseen way, there can be no good reason why one alone of the firm, because he survived the other, should have all those profits.   However, we think that he has a right to be protected against possible contingencies; and though the probability is very remote, that any claim by the true owners will ever be made for this fund, yet, while we affirm the judgment, we shall direct that the amount recovered be paid into court and held for twelve months longer, to await the presentation and proof of such claim, and in the event that none shall be presented, then that the money be paid to the complainant.   We further direct that the court take steps to advertise in such newspapers as shall be deemed best, the fact that the fund is on hand, with such description of the cotton which produced it as can be obtained, notifying all who may have claims thereon to come in within twelve months and make proof thereof.

We are aware that this proceeding and direction are not usual, but equity is invested with large powers, and under our peculiar system courts may frame remedies and mould decrees so as to fit every emergency.   There is certainly much right and justice in the disposition which we have given the case, and if no precedent in point can be produced, it is because no case precisely like this has ever arisen, or is likely to arise.

Let the judgment be affirmed, with the foregoing directtions.